## GANDIA v. PORTO RICO FERTILIZER CO.

(Circuit Court of Appeals, First Circuit. December 13, 1924.)

### No. 1777.

**1. Appeal and error ⊛1194(2)—Mandate on reversal held to leave question of merits open.**

On mandate of Circuit Court of Appeals, remanding case to Supreme Court of Porto Rico "for further proceedings not inconsistent with this opinion," *held* Supreme Court properly reviewed case on its merits; the opinion not disposing of, though incidentally referring to, facts and merits.

**2. Partnership ⊛311(1)—Dissolution agreement construed and held to entitle partner selling stock to contemporaneous payment of price.**

Deed of dissolution and liquidation of mercantile partnership providing that one partner should sell to the other all his stock in a named corporation at par, one-half of all declared dividends remaining to his credit, construed as entitling the partner selling to contemporaneous payment of purchase price and of dividends declared but unpaid, in view of the fact that in division of assets in specie there was a wide discrepancy in favor of purchaser.

**3. Partnership ⊛311(1) — Dissolution agreement drawn by counsel for one partner may be construed most favorably to other partner.**

Where deed of dissolution and liquidation of mercantile partnership is drawn by counsel of one of the partners, ambiguities or doubtful questions of construction may be resolved in favor of the other partner.

Appeal from the Supreme Court of Porto Rico.

Suit by Pedro Gandia against the Porto Rico Fertilizer Company. On receipt of mandate on reversal of its judgment, the Supreme Court of Porto Rico considered the case on its merits and again reversed the judgment of the District Court, and plaintiff appeals. Reversed and remanded.

Jose A. Poventud, of New York City, for appellant.

Francis G. Caffey, of New York City (George W. Study and Bouvier, Caffey & Beale, all of New York City, and Cayetano Coll Cuchi, of San Juan, Porto Rico, on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is the same case in which this court rendered an opinion on June 21, 1923, 291 F. 18. We then held the Supreme Court of Porto Rico in error in reversing the District Court of San Juan, for lack of necessary parties, in order to determine title to 60 shares of stock of the defendant company. After mandate from this court, Gandia contended that the reversal involved the merits, and thus affirmed the decision of the District Court in his

2 F.(2d.)—41

favor. The Fertilizer Company contended that this court decided only the question of law as to necessary parties, and that the merits were thus open for consideration by the Supreme Court on the original appeal to that court. The Supreme Court adopted that view, considered the case on the merits, and reversed the District Court.

Gandia's present appeal, therefore, involves two questions:

(1) Whether the Supreme Court of Porto Rico correctly interpreted the mandate from this court.

(2) If it did, whether the last decision of that court is correct.

[1] The mandate, which must be construed with the opinion, in terms remanded the case to the Supreme Court "for further proceedings not inconsistent with this opinion." The opinion referred to facts and merits, as distinguished from the question of law arising as to indispensable parties, only as a setting to show what the question of law really was.

The Supreme Court was correct in reviewing the appeal from the District Court on its merits. The question now before us on appeal is, then, as to the merits.

This is one of numerous lawsuits arising out of the dissolution agreement of the partnership of Gandia and Stubbe. The instrument thus fruitful of litigation is as follows:

"Articles of Dissolution and Liquidation of Mercantile Partnership.

"In the city of San Juan, Porto Rico, this 24th day of July, 1916. Before me, Cayetano Coll Cuchi, attorney and notary public, resident of this capital, with an office at No. 46 Tetuan Street, appears Johann D. Stubbe, of age, married, and merchant, of the one part and Pedro Gandia, of age, married, and a merchant, of the other part. Both parties are residents of this city of San Juan, and assure me that they have, as I believe they have, the necessary capacity to execute these articles of their own free wills. They set forth:

"First. That by deed No. 5 executed in San Juan, Porto Rico, on March 23, 1916, before the undersigned notary, both parties agreed to an extension for one year more of the mercantile partnership contract which they entered into before Notary Eduardo Acuna Aybar on April 18, 1908, the term of which had been successively extended until by the said deed executed before me its dissolution was fixed for the 18th of April, 1917, the said deed being duly recorded in the mercantile registry.

"Second. That, although the day fixed in the said deed for the dissolution of the part-

nership has not arrived, the parties consider it necessary to terminate their business relations and have agreed to dissolve the partnership in the manner and under the terms to be stated hereafter.

"Third. That for the purposes of the said dissolution of the partnership a general balance and inventory was made on July 18 of the present year, in order to close the books accordingly, it being as follows:

"Balance of Gandia & Stubbe on July 18, 1916.

Ledger.

| | |
|---|---|
| Account No. 3. Furniture ....... | $1,014.23 |
| Account No. 4. Lands in Trasmiramar ...................... | 12,104.86 |
| Account No. 5. Rural property.. | 23,450.35 |
| Account No. 6. Stock of Plata Sugar Company............... | 1,406.25 |
| Account No. 11. Cotton-mill building ....................... | 3,301.53 |
| Account No. 13. Stock of Porto Rico Fertilizer Company....... | 25,000.00 |
| Account No. 16. Mortgages ..... | 1,795.06 |
| Account No. 18. Commission Department, cash account........ | 5,281.17 |
| Account No. 19. Cash......... | 2,076.87 |
| Account No. 20. Dividends of Porto Rico Fertilizer Company.. | 16,468.12 |
| Account No. 21. Bills receivable | 128.08 |
| Account No. 33. Cattle business | 565.86 |
| Account No. 36. Consignment accounts ...................... | 3,989.26 |
| Account No. 37. Merchandise ... | 4,055.65 |
| Account No. 43. Commission Department, special account...... | 4,821.70 |
| Account No. 47. Accounts current .................... | 37,771.21 |
| Account No. 51. Stock of Central Pasto Viejo................... | 800.00 |
| Account No. 60. Gandia & Stubbe, liquidation account........ | 10,090.00 |
| Total ..................... | $154,120.55 |
| Account No. 1. Pedro Gandia, capital account.............. | $50,000.00 |
| Account No. 2. J. D. Stubbe, capital account.................. | 50,000.00 |
| Account No. 14. J. P. Coats, Limited ................... | 1,325.00 |
| Account No. 17. Sun Life Association Company of Canada.... | 1,082.68 |
| Account No. 22. Martin Falk, tires account ................... | 562.53 |
| Account No. 23. Discounted bill... | 2,200.00 |
| Account No. 24. Liverpool & London & Globe Insurance Company ....................... | 47.53 |
| Account No. 26. Taxes account.. | 129.71 |
| Account No. 27. The Palatine, duties account.................. | 126.66 |
| Account No. 42. Banks ........ | 154.88 |
| Account No. 44. J. D. Stubbe, personal account............. | 4,378.11 |
| Account No. 45. J. D. Stubbe, special account.......... | 13,200.00 |
| Account No. 46. Reserve fund... | 5,757.27 |
| Account No. 48. Pedro Gandia, personal account.............. | 5,389.51 |
| Account No. 50. Bills payable... | 4,335.53 |
| Account No. 56. Federico Stubbe | 7,476.63 |
| Account No. 59. P. Gandia, special account.................. | 7,954.51 |
| Total ..................... | $154,120.55 |

"Fourth. That the two partners have agreed that the said dissolution shall be made in the following manner: The assets of the partnership shall be divided between the two partners in the manner to be specifically stated hereinafter, the allotments being credited to the liabilities of the partnership; and there shall be opened a liquidation account of Gandia & Stubbe to settle all outstanding accounts not immediately susceptible of division between the partners by a liquidator to be appointed by common agreement, who shall act in the name and as the representative of both partners. Accounts receivable and accounts payable shall be intrusted to the liquidation; the partners agreeing to supply at any time such sums as may be necessary for the payment of any debts owing by Gandia & Stubbe to third persons and which the liquidator may not be able to meet.

"Fifth. In accordance with the plan agreed upon for the dissolution of the partnership Pedro Gandia takes charge of the following part of the assets:

| | |
|---|---|
| Furniture ........................ | $1,014.25 |
| Half of the stock of Plata Sugar Company ...................... | 703.12 |
| Mortgages ...................... | 1,795.06 |
| Commission department, cash account ....................... | 5,281.17 |
| Declared dividend of Porto Rico Fertilizer Company............... | 8,234.06 |
| Merchandise, a part of this account to the value of................. | 1,639.35 |
| Commission department, special account ......................... | 4,821.70 |
| Half of the stock of Central Pasto Viejo ....................... | 400.00 |
| Total ..................... | $23,888.71 |

Johann D. Stubbe takes charge of the following part of the assets:

| | |
|---|---|
| Lands in Trasmiramar, value agreed upon ....................... | $1,000.00 |
| Rural properties, cattle, and account of the Julia plantation, value agreed upon..................... | 17,500.00 |
| Half of the Plata Sugar Company... | 703.12 |
| Cotton-mill building............... | 3,301.53 |
| Stock of Porto Rico Fertilizer Company ...................... | 25,000.00 |
| Dividends of Porto Rico Fertilizer Company ...................... | 8,234.06 |
| Half of the stock of Central Pasto Viejo ........................ | 400.00 |
| Merchandise, a part of this account, to the value of.................. | 2,416.30 |
| Total ..................... | $58,555.01 |

"The following shall be turned over to the liquidation: The difference between the value of the lands in Trasmiramar as appearing in the final balance and price paid by Stubbe. The difference between the value of the rural properties as appearing in the final balance and the price paid by Stubbe. The cash account. The bills receivable. The consignment accounts. The current accounts. The accounts of Gandia & Stubbe in liquidation.

"Sixth. Both partners have agreed to ap-

point and do hereby appoint Arturo Trias, of San Juan, to take charge of the pending business as above stipulated.

"Seventh. The liquidator, Arturo Trias, will take charge of the books and open the corresponding liquidation accounts, charging Stubbe and Gandia with the assets of which they have taken charge and crediting the same to the corresponding accounts. The liabilities of the firm of Gandia & Stubbe shall be paid by the liquidator, charging the same to the corresponding accounts.

"Eighth. The partners agree upon the following special conditions for the purpose of the liquidation: (a) Gandia will sell to Stubbe all of his stock in the Porto Rico Fertilizer Company at par, one-half of all the dividends declared by the said company remaining to the credit of Gandia. (b) Gandia may make use of the house known as the cotton factory in Santurce up to the 31st of December, 1916, without using it for other purposes than those for which it is now used, paying to Stubbe the rent which Gandia collects for it from J. P. Coats & Co., Limited. (c) The balance resulting after the liquidation in favor of either of the partners will be paid by the debtor in negotiable notes of $1,000 each, payable one year after the date of this deed. (d) Gandia will remain in charge of the contracts for the premises of the old firm Gandia & Stubbe, without making any compensation whatever to Stubbe.

"Ninth. Although it is true that according to the provisions of the Code of Commerce no partner may demand delivery of the part of the assets corresponding to him in the division of the partnership until all of the debts and obligations of the company have been satisfied, both partners state that these debts, as far as third persons are concerned, amount to small sums which will be easily covered by the liquidator in liquidating the affairs of the company; but that at all times and places both partners will be responsible for delivering to the liquidator any sum which he may need for the prompt payment of the said obligations.

"Tenth. All of the expenses of the liquidation and dissolution of the partnership shall be charged to the two ex-partners.

"Eleventh. The effects of this deed shall be retroactive as of the 18th of July, last.

"Thus they agree, covenant, and sign after carefully reading this deed, and after I, the notary, fully advised them according to law, before me and witnesses Nicolas Fernandez and George A. Camejo, of this city, of age, without legal incapacity to act as such, to all of which I, the notary, certify. At this stage and before signing this deed the parties state that according to the accounts of the Porto Rico Fertilizer Company, the said corporation has, as undivided profits, the sum of $20,208.80; and it is hereby especially agreed that Stubbe shall pay to Gandia such sums as may from time to time be declared as dividends of the said corporation from the said undivided profits, in the proportion of the stock which Gandia sells to Stubbe. This addition to the articles was also read before the witnesses by the parties themselves and I again certify to it.

"J. D. Stubbe.
"P. Gandia.
"N. Hernandez.
"Jorge A. Camejo.

"Signed and sealed by Cay. Coll Cuchi."

[3] This instrument was drawn by Stubbe's counsel. Any ambiguities or doubtful questions of construction may therefore be resolved in Gandia's favor. The controversy, now before us on a third record, concerns the disposition of 60 shares of stock of the Porto Rico Fertilizer Company which stood in Gandia's name. The firm owned, beneficially, one-half the stock of this company, originally $50,000 at par, which appears as item No. 13 in the asset column, supra, at $25,000. Sixty shares stood in the name of each partner; 5 shares in the names of various representatives; 125 shares in the name of the firm. Stubbe claimed to get title to the 60 shares standing in Gandia's name under the fifth paragraph of the dissolution agreement, without contemporaneous payment in cash for the stock and declared dividends. Gandia refused to sign and deliver the certificate without receiving payment. As Stubbe controlled the corporate machinery of the Fertilizer Company, he caused it to treat the deed as a sufficient transfer and to issue new shares to him or his nominee. Hence accrued a mass of litigation, in which all sorts of irrelevant questions of law and of fact have been extensively and expensively tried, briefed, and argued.

We concur, in the main, with the Fertilizer Company's learned counsel, that the case turns on the construction of the deed, interpreted, of course, in the light of the pertinent facts and circumstances. We do not concur in his construction.

[2] The deed shows gross partnership assets of $154,120.55, in which Stubbe appears to own $70,456.74, and Gandia $66,222.70, leaving as debts to outsiders less than $18,000. But, in dividing the assets in specie, the deed provides that Stubbe should take $58,555.01, and Gandia only $23,888.71, or $34,666.30 less than his partner. This created a discrepancy in the division in specie that fairly grounds an expectation of finding in the deed some method provided of decreasing it.

Moreover, the stock of the Fertilizer Company seems to have been a choice and desirable part of the firm's assets. The asset column shows declared but unpaid dividends on this stock of $16,468.12. And in the last paragraph it appears that the company had undivided profits of $20,206.30.

Under such circumstances, Gandia's claim that he should have contemporaneous payment for the 60 shares standing in his name and of one-half of the dividends declared but unpaid was what one would naturally expect. The eighth paragraph, fairly interpreted, bears out that expectation. The pertinent part reads:

"The partners agree upon the following special conditions for the purpose of liquidation: (c) Gandia will sell to Stubbe all of his stock in the Porto Rico Fertilizer Company at par, one-half of all the dividends declared by the said company remaining to the credit of Gandia."

This "special condition" following the general provisions as to dividing the assets, on familiar principles, if inconsistent, cuts down the operation of what precedes. There is little, if any, inconsistency. Fairly construed, it meant that, for the purpose of effecting the liquidation, the 60 shares standing in Gandia's name were "his stock," to be transferred and paid for at par, plus his half of the dividends already declared, or $8,234.06. This would have given Gandia $6,000 in cash from Stubbe when he signed and delivered his certificate, and would also have entitled him to receive from the defendant, or from Stubbe, or from both, his half of the $16,468.12 already declared as dividends. Such a payment would have gone far to diminish the wide discrepancy between the partners in the division of the assets in specie, and to reduce the final balance to be settled under paragraph 8 (c).

The gist of the controversy, therefore, was whether Gandia should pay on delivery of the certificate or should pay in his one-year notes. Out of a difference of opinion on this very small matter has grown all this litigation.

But Gandia consistently and correctly claimed that he was entitled to contemporaneous cash payments from Stubbe and the defendant, together, of $14,234.06, and brought this suit because the defendant Fertilizer Company, had disregarded his rights as a stockholder therein.

A very minor point calls for brief comment. When this suit was originally tried in the District Court of San Juan, that court apparently overlooked the fact that Gandia's claim against the Fertilizer Com-

pany was simply for depriving him of his rights as owner of record of 60 shares of stock therein, and consequently held him entitled to one-half of the aggregate dividends then declared, $16,468.12. Technically, Gandia's rights against the corporation were limited to $^{60}/_{125}$ of these dividends. But no assignment of error has in any one of the three cases before us (Nos. 1594, 1604, and 1777) brought up this matter for review by this court. Clearly, these suits against the Fertilizer Company are but steps towards a final adjustment of the accounts between the former partners. We refer to this unassigned error as to the money judgment, rendered in No. 1604 against the Fertilizer Company, lest the amount involved be overlooked in the final adjustment of the partnership accounts.

The judgment of the Supreme Court of Porto Rico is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers his costs of appeal.